UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUSHANG ESHAGHIAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LINCOLN FINANCIAL GROUP, a California corporation; THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, an Indiana corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-00253-MCS-PLA<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS (ECF NO. 18)** |

Defendant Lincoln National Life Insurance Company moves to dismiss Plaintiff Houshang Eshaghian's first amended complaint ("FAC"). (Mot., ECF No. 18-1.) Plaintiff filed an opposition, (Opp'n, ECF No. 24), and Defendant replied, (Reply, ECF No. 27). The Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

1

I.  **Background**

This lawsuit arises from a life insurance policy (the "Policy") initiated on January 27, 2017. (FAC ¶ 5, ECF No. 17; *id.* Ex. 1 (the "Policy")[1].) The FAC alleges that the Policy included an "Accelerated Benefit Rider for Chronic Illness and Terminal Illness" that entitled Plaintiff to receive $2,000,000 after he became ill in 2017, but that Defendants have refused to pay more than $400,000. (*See id.* ¶¶ 5–9.) Plaintiff brings claims of breach of contract, (*id.* ¶¶ 13–19), intentional misrepresentation, (*id.* ¶¶ 20–28), negligent misrepresentation, (*id.* ¶¶ 29–35), breach of fiduciary duty, (*id.* ¶¶ 36–41), breach of the implied covenant of good faith and fair dealing, (*id.* ¶¶ 52–58), and violation of California Business and Professions Code section 17200 *et seq.*, (*id.* ¶¶ 59–63).

The Court granted Defendant's previous motion to dismiss after finding "Plaintiff's proposed interpretation" of the contract was "not reasonable, and the contract [was] therefore not ambiguous as to the amount payable to Plaintiff." (Order 6, ECF No. 16.) Specifically, the Court found that "[i]rrespective of what Plaintiff may have believed reading the rider in isolation, the definition of 'Specified Amount' makes clear that the $2,000,000 'Specified Amount Limit' is the maximum coverage amount that Plaintiff *could* have purchased, not the amount Plaintiff is entitled to under the rider." (*Id.* (citation omitted).) As a result, the Court found that because Plaintiff had "not pleaded facts giving rise to a reasonable interpretation that he is entitled to $2,000,000 under the Policy, all his claims fail[ed] as a matter of law." (*Id.* at 7.) The Court granted leave to amend because "California contract law allows a plaintiff to present relevant parol evidence that creates a latent ambiguity where the contract appears unambiguous on its face." (*Id.* (internal quotation marks omitted).) The Court noted that although it appeared unlikely, "the defects in the pleading could be cured by

---

[1] For ease of reference, all pinpoint citations to Ex. 1 of the FAC refer to the pagination supplied by the CM/ECF system.

an amendment with allegations of such parol evidence." (*Id.*)

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "A complaint may be dismissed for failure to state a claim only when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Reviewing a motion to dismiss, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the non-moving party. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). At the same time, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III.     Analysis

"[A]n insurance policy is a contract between an insurer and an insured, with the insurer making promises and the insured paying premiums, one in consideration of the other, against the risk of loss. Thus, while insurance contracts may have special features, the basic rules of contract interpretation still apply." *Pac. Bay Masonry, Inc. v. Navigators Specialty Ins. Co.*, 561 F. Supp. 3d 881, 885 (N.D. Cal. 2021). Construction of an insurance contract is a question of law, as is the question of whether the contract's language is ambiguous. *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422,

426 (9th Cir. 2011); *In re Ins. Installment Fee Cases*, 211 Cal. App. 4th 1395, 1409 (2012); *Total Call Int'l. Inc. v. Peerless Ins. Co.*, 181 Cal. App. 4th 161, 173 (2010).

"The California Supreme Court has established a three-step process for analyzing insurance contracts with the primary aim of giving effect to the mutual intent of the parties." *In re K F Dairies, Inc. & Affiliates*, 224 F.3d 922, 925 (9th Cir. 2000) (citing *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 821–23 (1990)). Courts begin by examining the "clear and explicit" meaning of the contractual terms in their "ordinary and popular sense." *AIU Ins. Co.*, 51 Cal. 3d at 822 (internal quotation marks omitted) (quoting Cal. Civ. Code § 1644). "[I]f the meaning a layperson would ascribe to contract language is not ambiguous, [courts] apply that meaning." *Id.* Under California law, "[a]n insurance policy provision is ambiguous when it is capable of two or more constructions both of which are *reasonable*." *Bay Cities Paving & Grading, Inc. v. Laws.' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993) (internal quotation marks omitted). As a result, under the first step of the analysis, a court is not required to identify the *best* reading of the contract, but instead must determine if Plaintiff's proposed interpretation is *reasonable*.

"If (and only if) a term is found to be ambiguous after undertaking the first step of the analysis, the court then proceeds to the second step and resolves the ambiguity by looking to the expectations of a reasonable insured." *In re K F Dairies*, 224 F.3d at 926 (internal quotation marks omitted). If an ambiguity is present, it "is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation." *AIU*, 51 Cal. 3d at 822 (citing Cal. Civ. Code § 1649). Courts "generally resolve ambiguities in favor of coverage" to protect "the objectively reasonable expectations of the insured." *AIU*, 51 Cal. 3d at 822. "These rules stem from the fact that the insurer typically drafts policy language, leaving the insured little or no meaningful opportunity or ability to bargain for modifications." *Id.* at 822.

"[I]f the ambiguity still remains" following an analysis under the first two steps,

the contract "is construed against the party who caused the ambiguity to exist. In the insurance context, this is almost always the insurer, as the California Supreme Court has held that ambiguities are generally resolved in favor of coverage . . . ." *In re K F Dairies*, 224 F.3d at 926 (citing *AIU*, 51 Cal. 3d at 822).

The Court previously found the Policy was not ambiguous, and the FAC contains no allegations to alter this conclusion. The only substantive addition to the FAC is the following statement:

> If no mention is made of the actual sum to be paid to Plaintiff, according to Defendants, then how is Plaintiff able to determine what that amount is? This is manifest deception, and omission, and fraud. Attached hereto are numerous examples of other insurance company policies, each of which indicates the actual policy amount, not merely the potential policy limit. This demonstrates industry standards, policies and procedures, which are clearly not followed by Defendants. (See sample insurance policy agreements, a true and correct copy of which is attached hereto as Exhibit 13, and incorporated herein by reference.)

(FAC ¶ 5; *see also* FAC Redline ¶ 5, ECF No. 17-1.)

Plaintiff's hypothetical question is not a fact "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. What is more, the argument is premised on the same logic that the Court considered and dismissed in its prior order. Plaintiff continues to insist that the rider be read without reference to the rest of the Policy, (*see* Opp'n 4), but Courts "consider the contract as a whole and interpret the language in context, rather than interpret a provision in isolation," *Am. Alternative Ins. Corp. v. Superior Ct.*, 135 Cal. App. 4th 1239, 1245 (2006). Here, "Plaintiff [is] able to determine what [the] amount is," (FAC ¶ 5), by referring to the definition of "Specified Amount" in the Policy, which is defined

as:

> The amount you chose at issue which is used to determine the amount of death benefit and the amount of rider benefits, if any. The minimum Specified Amount allowable under this policy and the Specified Amount at issue ("Initial Specified Amount") are shown in the Policy Specifications. The Specified Amount may be increased or decreased as described in this policy.

(Policy 53). The Policy also clearly states that the benefits are equal to "the initial specified amount of this policy if premiums are duly paid and there are no outstanding policy loans or partial surrenders." (*Id.* at 30.) Because the "Initial Specified Amount" is "$400,000," (*id.*), reading the contract as a whole it is clear that the rider's $2,000,000 "Specified Amount Limit" can only be interpreted as the maximum coverage amount that Plaintiff *could* have purchased, not the amount Plaintiff is entitled to under the rider. Plaintiff's new allegation that Defendants' conduct constitutes "manifest deception, and omission, and fraud" is unsupported by any factual allegations and thus fails to show he is entitled to relief. (FAC ¶ 5); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003); Fed. R. Civ. P. 9(b).

The "examples of other insurance company policies" are likewise insufficient to create an ambiguity where the contract appears unambiguous on its face. (FAC ¶ 5 (emphasis omitted).) The parol evidence rule generally prohibits the introduction of extrinsic evidence, to vary, alter or add to the terms of an integrated written instrument, but does not prohibit the introduction of extrinsic evidence to explain the meaning of a written contract if the meaning urged is one to which the written contract terms are reasonably susceptible. *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343 (2004). Defendant correctly points out that the proffered polices "are not uniform in their terminology or organization, and Plaintiff does not explain how they evidence any reasonable alternative interpretation of his policy that would entitle him to accelerated

6

benefits." (Mot. 13; *see* Opp'n 4–5.) Nor are there any allegations that "Plaintiff considered any of the attached documents in deciding to purchase the Policy, or explaining how any of those documents support an argument that the Policy and Accelerated Benefits Rider are reasonably susceptible to Plaintiff's proposed interpretation." (Mot. 13.) Further, "none of the documents in Exhibit 2 define a 'Specified Amount Limit' as an amount that is payable as policy benefits." (*Id.*)

Based on the analysis above, Plaintiff has failed to allege he is entitled to receive $2,000,000 under the Policy.

## IV. Conclusion

Just as before, all of Plaintiff's claims turn on Defendant's alleged failure to pay the $2,000,000 sum that Plaintiff believes he is owed. (*See* FAC ¶¶ 15–17, 21–27, 30–34, 37–40, 56–57, 59–60.) Because Plaintiff has not pleaded facts giving rise to a reasonable interpretation that he is entitled to $2,000,000 under the Policy, all his claims fail as a matter of law. Defendant's motion to dismiss is GRANTED and the FAC is dismissed in its entirety.

///

Leave to amend need not be granted when further amendment would be futile. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). "[A] district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (internal quotation marks omitted). Here, Plaintiff has had two attempts to state a claim for relief. Given the FAC contained only a single relatively modest alteration from the original complaint, it is clear that "no set of facts can be proved" upon subsequent "amendment that would constitute a valid claim." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (internal quotation marks omitted). Accordingly, leave to amend is DENIED.

The Court will issue a separate judgment.

**IT IS SO ORDERED.**

Dated: September 6, 2023

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE